Larry **VAN ESSEN** and Rebecca Van Essen, Appellants,

v.

**Farmers Cooperative Exchange, Defendant,**

and

**McCORMICK ENTERPRISES CO., Appellee.**

No. 98–131.

Supreme Court of Iowa.

Sept. 9, 1999.

Rehearing Denied Sept. 27, 1999.

John R. Ward, Des Moines, for appellants.

Frank A. Comito and Kent A. Gummert of Austin, Gaudineer & Comito, L.L.P., Des Moines, for appellee.

Considered by LARSON, P.J., and CARTER, TERNUS, CADY, and HARRIS,* JJ.

TERNUS, Justice.

The appellant, Larry Van Essen, suffered a severe injury to his leg when his foot was caught in an exposed auger located in a grain bin owned by the appellee, McCormick Enterprises Company [hereinafter "McCormick"], and leased to the defendant, Farmers Cooperative Exchange [hereinafter "the Coop"]. The district court granted McCormick's motion for summary judgment, concluding that McCormick owed no duty to Van Essen. We agree and so affirm.

## I. Undisputed Facts.

Prior to 1991, McCormick operated a grain storage business on the premises in question. In 1986, it had contracted with a supplier to build the grain bin in which Van Essen was injured. The bin contained an auger system in the floor to facilitate the unloading of grain from the bin. There were four holes in the floor above the auger through which grain would flow into the rotating auger and be conveyed out of the bin. These holes were covered by metal lids, called roller gates, that would be mechanically pulled back during the unloading process to allow the flow of grain into the exposed auger. During the final stages of emptying the bin, persons would enter the bin to scoop the last of the grain through the holes and into the auger.

* Retired justice serving as senior judge pursuant to Iowa Code section 602.9206 (1999).

In 1991, McCormick closed its business and leased the grain bin and associated facilities to a company later acquired by the Coop. The grain bin remained in the condition described above, a fact known to the original lessee and to the Coop.

In 1995, Van Essen, a truck driver, was sent by his employer to the Coop to pick up a load of beans. Van Essen entered the grain bin to assist a Coop employee in cleaning out the remaining beans from the bin. While doing so, Van Essen accidentally stepped into one of the open holes in the floor, causing the amputation of his foot. Additional facts will be discussed in connection with our consideration of the issues.

## II. *Prior Proceedings and Issue on Appeal.*

Van Essen and his wife subsequently filed this action against the Coop and McCormick.[1] The Van Essens claimed that McCormick was negligent with respect to the design, construction, and maintenance of the bin, and in its failure to warn of dangers in the bin. McCormick filed a motion for summary judgment that was granted by the district court on the basis that McCormick owed no duty to Van Essen. The Van Essens then settled their claims against the Coop and filed this appeal.

Although allegations of negligent design and construction were alleged in the district court, on appeal the Van Essens have more narrowly framed the issue: "McCormick, *as owner/lessor,* remains liable for unsafe conditions created by [it] or unsafe conditions existing before or at the time of the lease." (Emphasis added.) Thus, we limit our discussion to the scope of an owner's liability for injuries resulting from a dangerous condition on leased land where that condition was created by the owner and existed at the time the premises were leased.

## III. *Scope of Review.*

We review the district court's entry of a summary judgment for correction of errors at law. *See Iowa Tel. Ass'n v. City of Hawarden,* 589 N.W.2d 245, 250 (Iowa 1999). Summary judgment will be upheld where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 237(c).

This case turns on whether the defendant owed the plaintiff a duty of care. *See Sankey v. Richenberger,* 456 N.W.2d 206, 207 (Iowa 1990) ("[T]he threshold question in any tort case is whether the defendant owed the plaintiff a duty of care."). "Whether such a duty arises out of the parties' relationship is always a matter of law for the court." *Hoffnagle v. McDonald's Corp.,* 522 N.W.2d 808, 811 (Iowa 1994). Because the existence of a duty is a question of law for the court, it may appropriately be adjudicated on a motion for summary judgment. *See Teunissen v. Orkin Exterminating Co.,* 484 N.W.2d 589, 591 (Iowa 1992).

## IV. *Did the Defendant, as the Owner and Lessor of the Premises, Owe a Duty of Care to the Plaintiff?*

A. *General principles.* "The elements of a negligence claim include the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages." *Marcus v. Young,* 538 N.W.2d 285, 288 (Iowa 1995); *see also* W. Page Keaton, *Prosser and Keaton on Torts* § 30, at 164 (5th ed.1984). Courts look to legislative enactments, prior judicial decisions, and general legal principles as a source for the existence of a duty. *See Engstrom v. State,* 461 N.W.2d 309, 315 (Iowa 1990). Our court has often relied on the Restatement (Second) of Torts "when determining whether a given defendant owes a duty to a plaintiff and the

---

1. The Coop and McCormick filed claims for contribution and indemnity against various third-party defendants. These claims are not involved in this appeal.

scope of that duty." *Shaw v. Soo Line R.R.*, 463 N.W.2d 51, 55 (Iowa 1990). Ultimately, though, the existence of a duty is a policy decision, based on the relevant circumstances, that the law should protect a particular person from a particular type of harm. *See Larsen v. United Fed. Sav. & Loan Ass'n*, 300 N.W.2d 281, 285 (Iowa 1981).

■ B. *Duty of an Owner/Lessor of Land.* It is well established under Iowa law that a possessor of land owes a duty of care to entrants upon the land, including business invitees.[2] The general rule is as follows:

■ The possessor of land is under a duty to use ordinary care to keep the premises in a reasonably safe condition for business invitees. This duty requires the possessor to use reasonable care to ascertain the actual condition of the premises. The duty also requires the possessor to make the area reasonably safe or to give warning of the actual condition and risk involved.

*Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614, 618 (Iowa 1990) (citations omitted). The Restatement (Second) of Torts and our cases define a "possessor" of land as

(a) a person who is in *occupation* of the land with the intent to *control* it or

(b) a person who has been in *occupation* of the land with intent to *control* it, if no other person has subsequently occupied it with intent to *control* it, or

(c) a person who is entitled to immediate *occupation* of the land, if no other person is in possession under clauses (a) and (b).

Restatement (Second) of Torts § 328E, at 170 (1965) (emphasis added); *accord Hoffnagle*, 522 N.W.2d at 813; *Downs v. A & H Constr. Ltd.*, 481 N.W.2d 520, 524

(Iowa 1992). As this definition implies, possessor status, and the corresponding duty of due care, turns not on ownership, but on occupation and control of the land. *See Hoffnagle*, 522 N.W.2d at 813.

This conclusion is reflected in the principles of law applicable to an owner who has leased his land to another:

■ In [the] case [of an absentee owner of rental property], the mere fact of ownership is not sufficient to impose liability for premises defect. While ownership includes the right of possession and control, "possessory rights may be 'loaned' to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility."

*Galloway v. Bankers Trust Co.*, 420 N.W.2d 437, 441 (Iowa 1988) (quoting *Merritt v. Nickelson*, 407 Mich. 544, 287 N.W.2d 178, 181 (1980)). Similarly, the Restatement states the following rule with respect to the liability of a lessor: subject to certain exceptions, "a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession." Restatement (Second) of Torts § 356, at 240; *accord* 62 Am.Jur.2d *Premises Liability* § 13, at 361 (1990) ("In the case of injuries to third parties occasioned by the condition or the use of leased premises, it is the general rule that, prima facie, the breach of duty and therefore the liability, is that of the tenant or lessee and not that of the landlord or lessor."). The comment to Restatement section 356 amplifies this rule:

[I]t is the general rule that the lessor is not liable to the lessee, or to others on the land, for injuries occurring after the lessee has taken possession, *even though*

---

**2.** Van Essen's status as a business invitee is not disputed. "A business invitee is one 'who is invited to enter or remain on land for [a] purpose directly or indirectly connected with business dealings with the possessor of [the] land.' " *Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614, 618 (Iowa 1990) (quoting Restatement (Second) of Torts § 332, at 176 (1965)). Although not determinative of any issue in this appeal, the status of the plaintiff continues to be relevant under Iowa law. *See Richardson v. The Commodore, Inc.*, 599 N.W.2d 693, 698 n. 3 (Iowa 1999).

*such injuries result from a dangerous condition existing at the time of the transfer.*

Restatement (Second) of Torts § 356 cmt. *a,* at 240 (emphasis added); *accord Wright v. Peterson,* 259 Iowa 1239, 1244, 146 N.W.2d 617, 620 (1966).[3]

Based on these authorities, it is clear that McCormick's ownership of the grain bin is not sufficient, standing alone, to place a duty on McCormick to business invitees such as Van Essen. Nor does the fact that the allegedly dangerous condition existed when McCormick leased the bin support the imposition of a duty. Therefore, we must find an applicable exception to the general principles discussed above in order to sustain the Van Essens' claim against McCormick.

■ C. *Retained control.* The Van Essens argue that McCormick exercised a degree of control over the premises that warrants its continued responsibility for dangerous conditions on the land. They are on solid ground in arguing that retained control is an exception to the rule of nonliability of an owner/lessor. *See* Restatement (Second) of Torts § 360, at 250; *Stupka v. Scheidel,* 244 Iowa 442, 447, 56 N.W.2d 874, 877 (1953) (holding that rule of nonliability of landlord "does not apply where the owner retains control, or the owner and tenant have joint control, over the premises or the part thereof where the injury occurs"). The crucial question is whether the Van Essens have shown that McCormick retained control of the bin. *See Hoffnagle,* 522 N.W.2d at 814 (holding that question of retained control is part of

duty issue and is therefore "necessarily and properly determined as a matter of law by the court").

■ The Van Essens rely on three facts, in addition to McCormick's ownership of the bin, to prove control: (1) McCormick had a contractual obligation to insure the bin; (2) McCormick agreed in the lease to pay one-half of the cost of repairs; and (3) rent due McCormick was based on an equal share of the proceeds generated by the Coop's storage of grain in the bin. There are other facts, however, that more directly reflect McCormick's actual control of the bin. The lease agreement specifically stated that the Coop had inspected the bin and was leasing it without requiring McCormick to perform any repairs. In addition, all repairs and maintenance to the bin were initiated and directed by the Coop. It is also undisputed in the record that McCormick had no control over the day-to-day operation of the grain bin.

We think the district court correctly concluded that the undisputed facts showed McCormick did not retain significant control over the bin. Its participation in the profits generated by the bin and in the expense of repairs and maintenance is not sufficient to establish that it had the requisite degree of control so as to justify the imposition of a duty to keep the premises safe for business invitees. *See Willis v. Snyder,* 190 Iowa 248, 250, 180 N.W. 290, 291 (1920) (refusing to hold landlord liable where there was no express agreement to repair and the tenant had full control over the premises).[4]

---

3. The Van Essens argue that our decision in *Allison by Fox v. Page,* 545 N.W.2d 281 (Iowa 1996), sets forth a contrary rule. In that case, we made the general statement that "the landlord remains liable for any conditions existing before or at the time the property is leased." *Allison,* 545 N.W.2d at 283. Although in retrospect our observation was too broad in its scope, it must still be read in context. Immediately following the quoted statement, we said, "The general rule and exceptions [of which the quoted statement was one] reveal a common principle: *liability is premised upon control." Id.* (emphasis add-

ed). Our statement in *Allison* was not meant to change the law in Iowa, and we disavow any contrary implication.

4. The Van Essens place great reliance in their brief on our decision in *Stalter by Stalter v. Iowa Resources, Inc.,* 468 N.W.2d 796 (Iowa 1991). In that case, this court rejected a premises liability claim against the former owner of a railroad spur upon which the plaintiff was injured, but held that there was, nonetheless, a submissible claim based on the allegation that the former owner had negligently built the spur in a dangerous condition.

This conclusion is in accord with established public policy. This policy was explained in our *Stalter* case, in which we discussed "[t]he rationale underlying the general rule that one who has transferred ownership and control is no longer held liable." *Stalter by Stalter v. Iowa Resources, Inc.*, 468 N.W.2d 796, 798 (Iowa 1991).[5] In that case we stated that the rationale underlying the rule "is that the former owner [or lessor] no longer has control and thus may not enter the property to cure any deficiency, and, he/she cannot control the entry of persons onto the property to provide safeguards for them." *Id.*

We again endorse this rationale and, having found no exception to the general rule applicable, hold that the district court did not err in ruling that McCormick owed no duty to Van Essen. Accordingly, summary judgment was properly granted to McCormick. *See Hoffnagle*, 522 N.W.2d at 810 (affirming summary judgment for defendant lessor because lessor "did not retain sufficient control ... so as to give rise to a duty"); *cf. Downs*, 481 N.W.2d at 524 (holding as a matter of law that defendant owner owed no duty of care because it had surrendered control to a general contractor without retaining enough control to qualify as a possessor of land).

**AFFIRMED.**

---

*Stalter*, 468 N.W.2d at 800–01. This holding is of no assistance to the Van Essens, however, because the fact is undisputed in the record before us that another entity built the bin for McCormick. In other words, McCormick was not the actual builder, as was the defendant in the *Stalter* case.

5. Although the defendant in *Stalter* was a *former* owner, the same rationale applies to the nonliability of an owner/lessor. *See* Restatement (Second) of Torts § 356 cmt. *a*, at 240 ("When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the land for the term of the lease.").