Marcia WIEDMEYER, Appellant,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, A New York Corporation, Appellee.

No. 00–0957.

Supreme Court of Iowa.

May 8, 2002.

Patrick L. Woodward of McDonald, Stonebraker & Cepican, P.C., Davenport, and George B. Norman, Davenport, for appellant.

Peter J. Thill of Betty, Neuman & McMahon, L.L.P., Davenport, for appellee.

CARTER, Justice.

Plaintiff, Marcia Wiedmeyer, appeals from an adverse summary judgment in a slip-and-fall damage action against the Equitable Life Assurance Society of the United States (Equitable), the owner of Duck Creek Plaza, a shopping mall in Bettendorf. Plaintiff alleged Equitable failed to maintain the parking lot of its shopping center in a safe manner and that, as a result, she fell and sustained serious injuries. Equitable asserted, among other defenses, that it was not the possessor of the real estate as the result of a management agreement that it had entered into with General Growth Management Company (General Growth).

The district court sustained Equitable's motion for summary judgment on the basis that General Growth rather than Equitable was the possessor of the property where plaintiff sustained her injury. After reviewing the record and considering the arguments presented, we reverse that decision and remand the case to the district court for further proceedings.

Plaintiff has alleged that she visited Duck Creek Plaza December 7, 1996, for the purpose of shopping in certain of the stores located there. She parked her vehicle in a parking area provided for Duck Creek Plaza customers. While traversing the parking lot, she alleges that she slipped and fell on a patch of ice, fracturing her ankle. She contends that her fall was the result of an unsafe condition of the property, which she asserts was possessed by Equitable.

Equitable owned Duck Creek Plaza on the date of plaintiff's injury. It had, however, entered into a real estate management agreement with General Growth, which appointed the latter as the exclusive managing and renting agent for the mall. Among the matters that General Growth agreed to perform on behalf of Equitable was to "arrange for cleaning and snow removal for the parking areas and roadways of the premises." Specific provisions of the management agreement that relate to this controversy will be discussed in connection with our consideration of the legal issues presented.

## I. *Standard of Review.*

 The ruling of the district court was based on its conclusion that Equitable owed no legal duty to the plaintiff because it was not the possessor of the real estate. The standard of review when the issue is whether a legal duty exists is correction of errors at law. Iowa R.App. P. 6.4; *Allison by Fox v. Page*, 545 N.W.2d 281, 282 (Iowa 1996). It is well established that in assessing whether summary judgment is appropriate the court views the entire record in the light most favorable to the nonmoving party. *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000).

## II. *Whether Equitable Was the Possessor of Duck Creek Plaza so as to Make it Responsible for the Duties Recognized in Section 343 of the Restatement (Second) of Torts (1965).*

 The determinative issue on appeal is whether Equitable was the possessor of Duck Creek Plaza so as to be subject to the duties recognized in section 343 of Restatement (Second) of Torts (1965). That section of the Restatement provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

The status of a "possessor of land" turns on occupation and control of the land, not mere ownership. *Van Essen v. McCormick Enters. Co.*, 599 N.W.2d 716, 718 (Iowa 1999). We have adopted the definition of "possessor" contained in section 328E of Restatement (Second) of Torts. *Id.* at 719. This section of the Restatement provides:

A possessor of land is

(a) a person who is in occupation of the land with intent to control it, or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under clauses (a) and (b).

Restatement (Second) of Torts § 328E.

We have recognized that the owner of land may in some situations loan its possession to another, thus rendering that party the possessor and negating the owner's status as such. *Galloway v. Bankers Trust Co.*, 420 N.W.2d 437, 441 (Iowa 1988). Equitable urges that it loaned possession of the Duck Creek Plaza to General Growth and thus was not itself a possessor at the time of plaintiff's injury. Plaintiff asserts that one who exercises control over land through an agency agreement with a contract manager is a possessor for purposes of the liability recognized in section 343 of the Restatement.

Equitable argues that in the present case the specific law of absentee owner immunity takes precedence over general principles of agency law. It urges that, although generally a principal may be liable for the acts or omissions of its agent, in no circumstance does premises liability exist unless the defendant occupies the status of a possessor of the land. Section 422 of the Restatement provides that

[a] possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a

building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure

(a) *while the possessor has retained possession of the land during the progress of the work, or*

(b) *after he has resumed possession of the land upon its completion.*

(Emphasis added.) We relied upon this section of the Restatement in *Kragel v. Wal–Mart Stores, Inc.*, 537 N.W.2d 699, 703–04 (Iowa 1995), to visit premises liability on a retail store that entrusted snow removal to an independent contractor.

Equitable urges that the store owner in the *Kragel* case retained possession of the land while its snow removal obligations were being carried on by another entity. It argues that subsections (a) and (b) of section 422 expressly require possession as a condition for premises liability. It contends that the manner in which General Growth took charge of the mall operation for Equitable rendered General Growth the possessor of the property and negated Equitable's status as such. We disagree.

Equitable's argument overlooks the fundamental principle of agency law under which acts of an agent in carrying out the principal's affairs are in legal effect the acts of the principal. Section 12 of the Restatement (Second) of Agency provides:

An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself.

Comment (a) to that section provides that "[w]hen a duly constituted agent acts in accordance with his instructions in matters as to which it is possible for a principal to act through an agent . . . he has power to affect the legal relations of the principal to the same extent as if the principal had so acted." Based on this principle, we are convinced that the acts of General Growth in asserting possession and control over the premises are in legal effect the acts of Equitable. As a consequence of those acts, Equitable continued to be the possessor of the Duck Creek Plaza.

In *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808 (Iowa 1994), we held that a franchiser-owner of a restaurant property was not a possessor when the property was occupied and controlled by a franchisee. We expressly noted that the relationship between the owner and its franchisee was not that of principal and agent. There was also no principal/agent relationship in the *Van Essen* and *Galloway* cases in which we applied the loaned-possession doctrine. As a result, *Van Essen, Hoffnagle,* and *Galloway* are not in conflict with our holding in the present case.

The language of the agency agreement does not alter our conclusion and indeed supports it. Section 2.1 of article II of the agency agreement provides:

Agent, on behalf of Owner, shall implement, or cause to be implemented, the decisions of Owner and shall conduct the ordinary and usual business affairs of Owner as provided in this Agreement. Agent shall at all times conform to the policies and programs established by Owner and the scope of Agent's authority shall be limited to said policies. All undertakings incurred by Agent on behalf of Owner under this Agreement shall be at the cost and expense of Owner unless otherwise provided for herein. Agent agrees to use its best efforts in the management and operation of the Premises, and to comply with Owner's instructions.

Subparagraph (c) of this same article requires the agent to

[k]eep the Premises in a safe, clean and sightly condition and make and contract for all repairs, alterations, replacements, and installations, do all decorating and landscaping, and purchase all supplies necessary for the proper operation of the premises. . . .

Subparagraph (z) of this article requires the agent to

arrange for cleaning and snow removal for the parking areas and roadways of the premises.

■ We are convinced that, under both general agency doctrine and the specific provisions of the agency agreement at issue here, the legal consequence of General Growth's acts in possessing and controlling the Duck Creek Plaza were "to the same extent as if the principal had so acted." Restatement (Second) of Agency § 12, cmt. a. Consequently, Equitable was a possessor of the property and subject to the duties recognized in section 343 of the Restatement (Second) of Torts.

We have considered all issues presented and conclude that the judgment of the district court must be reversed. The case is remanded to the district court with directions to deny Equitable's motion for summary judgment.

**REVERSED AND REMANDED.**

All justices concur except NEUMAN, J., who takes no part.